UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                      Case Number: 14-11773-7

GERALD EUGENE ADOLPHSON
and BESSIE UNA ADOLPHSON,

Debtors.

---

## DECISION

### PROCEDURAL HISTORY

The Debtors, Gerald and Bessie Adolphson, filed a voluntary Chapter 7 Petition on April 23, 2014. They scheduled an interest of unknown value in "Burnett Dairy Cooperative Equity Revolvement Account" on Schedule B. The Debtors' additional comments on Schedule B state, "Net equity balance: $36,761.04 (When distributions are made and the amount of distributions is entirely within the discretion of the cooperative based on the cooperative's financial performance)."

The Debtors initially claimed a $9,710 exemption in the account under Wis. Stat. § 815.18(3)(k). This statute provides an exemption for "[d]epository accounts in the aggregate value of $5,000, but only to the extent that the account is for the debtor's personal use and is not used as a business account." The Trustee objected to this claim of exemption on June 12, 2014, on the grounds that the account was not a depository account and the Debtors' interest in the account was tied to the activities of their business.

Following a preliminary hearing on the Trustee's objection, the Debtors amended Schedule C to claim federal exemptions. The Amended Schedule C lists the value of their interest as unknown and asserts the sum of $36,761.04 is exempt under section 522(d)(10)(E) of the Bankruptcy Code. The Trustee renewed his objection to the exemption, arguing the account does not qualify under the statute and the right to receive payments is not reasonably necessary to support the Debtors or their dependents. The parties have submitted the Articles of Incorporation, Bylaws, and account information and stipulate those documents are the relevant evidentiary basis for decision. The parties have briefed the issues.

## FACTS

The Debtors are members of the Burnett Dairy Cooperative, a non-stock cooperative. *Articles of Incorporation*, p. 1, Article III. The Cooperative serves as a marketing cooperative, marketing the dairy products of its members. *See Bylaws*, p. 23, Bylaw 10. Some of the Cooperative's net income may be credited to capital reserves, and the rest is allocated proportionally among its patrons "in the ratio that the quantity or value of the business done with or for each patron bears to the quantity or value of the business done with or for all patrons of such allocation unit." *Bylaws*, p. 14, Bylaw 6, Section 1, Section 2(a); p. 16, Section 5. As one court succinctly puts it, "The principal difference between the cooperative form of doing business and the ordinary corporate form is that the shareholders of a cooperative share in the cooperative's income

2

in proportion to their purchases from the cooperative rather than to the number of shares they own." *CF Indus., Inc. (& Subsidiaries) v. Commissioner*, 995 F.2d 101, 101 (7th Cir. 1993), *as modified on reh'g* (Sept. 17, 1993).

Patrons, including the Debtors, receive annual (or more frequent) distributions in cash, allocated patronage equities, revolving fund certificates, securities of the Cooperative, other securities, "or any combination thereof designated by the Board of Directors . . . ." *Bylaws*, p. 17, Bylaw 6, Sections 7(a) and (b). The Board of Directors may choose to distribute patronage refunds in the form of equity so the Cooperative has reserved capital. Such equity is at issue here.

Redemption of the Debtors' equity is determined by the Cooperative's Board of Directors: "The Board of Directors shall, in its sole discretion, revolve and redeem equity in any order or pursuant to any policy developed by the Board of Directors." *Bylaws*, p. 22, Bylaw 6, Section 11. The Bylaws also provide:

> The Board of Directors may, from time to time, establish policies for redeeming equities of members and patrons, which policies the Board shall also have the power to amend, modify or repeal, but no such policy shall be interpreted to require an expenditure of capital until final approval for that expenditure is given by the Board of Directors.

*Bylaws*, p. 19, Bylaw 7(h).

## DISCUSSION

Under Bankruptcy Rule 4003(c), as the objecting party, the Trustee has the burden of proving that the exemption does not apply. The standard of required proof is a preponderance of the evidence. *See, e.g., In re Isaacs*, 491 B.R. 893, 895 (Bankr. W.D. Wis. 2013); *In re Giffune*, 343 B.R. 883, 889 (Bankr. N.D. Ill. 2006).

Section 522(d)(10)(E) of the Bankruptcy Code allows a debtor selecting the federal exemptions to exempt:

> The debtor's right to receive—
>
> a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
>> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>>
>> (ii) such payment is on account of age or length of service; and
>>
>> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

As the Supreme Court has stated, "on account of" in the statute means "because of." *Rousey v. Jacoway*, 544 U.S. 320, 326-27, 125 S. Ct. 1561, 161 L. Ed. 2d 563 (2005). This means that the payment must, at least in some circumstance, be triggered by illness, disability, death, age, or length of service.

4

In this case, the Debtors assert their patronage equity constitutes a right to receive payment under a profitsharing plan because of length of service. The Debtors state, "[P]ayment to the Adolphsons from their account with Burnett Dairy Cooperative is . . . on account of their length of service as members of the cooperative. Their net equity balance with the cooperative took years to accumulate." The Debtors argue they acquired their patronage equity over time, through their past transactions of business with the Cooperative, and thus the equity they have accumulated, and any redemption of such equity, is due to their "length of service."

However, by examining the Cooperative's Bylaws, it is clear the payment (i.e., redemption of the Debtors' patronage equities) is not triggered by the Debtors' length of service. Interpreting what it means to have a right to payment "on account of length of service" under New York's exemption statute,[1] one court found:

> [T]he phrase "length of service" as used in the statute just examined must also be read in context. Again, the full clause is "all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service . . ." ." Before the days of such "portable" retirement planning devices as "401 k's" and "SEP's," pension plans, etc. required years of service before they became "vested." . . . "Length of service" is a clear, plain, ordinary term connoting tenure. . . . The statute means plans or contracts by which benefits

---

[1] "The debtor's right to receive or the debtor's interest in: . . . (e) all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service . . . ." N.Y. DEBTOR AND CREDITOR LAW § 282 (McKinney).

5

> are conferred in relation to the number of years that the Debtor has been employed.

*In re Lowe*, 252 B.R. 614, 623 (Bankr. W.D.N.Y. 2000). A similar reading of section 522(d)(10)(E) is supported by the Supreme Court's decision in *Rousey v. Jacoway*. 544 U.S. 320. The Court observes, "The common feature of all of these plans [listed in section 522(d)(10)(E)] is that they provide income that substitutes for wages earned as salary or hourly compensation." 544 U.S. at 331. Reading "length of service" in this context leads to the same conclusion the *Lowe* court reached: The term means plans or contracts conferring benefits based on tenure of employment or service. In this case, the Cooperative does not redeem the Debtors' equity based on the length of time they have transacted business with the Cooperative, nor does it even determine the equity to allocate based on the Debtors' tenure. The equity is not a sum intended to substitute for wages. It is simply a form of rebate for patronage.

Further, redemption of the Debtors' equity is at the discretion of the Cooperative's Board of Directors and is not triggered by a specific event. The equity is either distributed or retained at the sole discretion of the Board of Directors. Although the Bylaws provide the Board may develop policies for redemption, ultimately, the final decision about whether or not to comply with a policy rests with the Board. The Bylaws consider the application of a hypothetical policy calling for redemption of a member's equity on death, but

even under the hypothetical, distribution is exclusively discretionary. The Bylaws provide:

> Even though the application of a policy to a specific circumstance might suggest, for example, that the equity of a deceased member should be paid to the estate of that member, the Board of Directors in each such case retains the right and power to determine, in its sole discretion, whether to approve the expenditure, and in any such case the Board of Directors shall have the right and power to refuse to approve an expenditure if the Board determines that such expenditure is not in the interest of the Cooperative.

*Bylaws*, p. 19, Bylaw 6, Section 7(h). Further, "[a]ny redemption or retirement is solely within the discretion and on such terms as determined from time to time by the Board of Directors of this Cooperative . . . ." *Id.* The Board may distinguish natural members from business organizations and "favor natural members with respect to estate retirements and revolvements at specified ages." *Id.* However, because of the complete discretion granted to the Board, the Bylaws do not provide that such redemption depends on illness, disability, death, age, or length of service.

Because the Debtors do not have a right to receive payment on account of length of service or any of the other statutory events, their citation to *In re Rove* is inapposite. *In re Rove*, 505 B.R. 502 (Bankr. E.D. Wis. 2013). *Rove* stands for the proposition that the statutorily-enumerated ways of accessing funds need not be the only way a debtor may access the funds for the exemption to apply. The debtor in *Rove* could receive her funds when she reached the age of 67, and the fact that she could also reach the funds under

7

other circumstances did not defeat the exemption. However, under *Rove*, at least *one* of the ways a debtor may access the funds must be a method enumerated in section 522(d)(10)(E). Here, the Bylaws do not contain any of the statutory triggers as a way for the Debtors to reach their patronage equity.

## CONCLUSION

For the foregoing reasons, the Trustee's objection is SUSTAINED. The Debtors are not entitled to exempt the patronage account under 11 U.S.C. § 522(d)(10)(E).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: February 27, 2015.

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge